**Billy Max COLEMAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. HS–70–C–17.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.
May 21, 1970.

Billy Max Coleman, pro se.

## MEMORANDUM AND ORDER

JOHN E. MILLER, Senior District Judge.

The Warden of the United States Penitentiary at Marion, Illinois, transmitted to the Clerk of this Court on behalf of the petitioner, Billy Max Coleman, a "Motion for Writ of Habeas Corpus pursuant to 28 U.S.C. 2255." On May 15, 1970, the court entered an order permitting the motion to be filed in forma pauperis.

The petitioner is now imprisoned in the United States Penitentiary at Marion, Illinois, and in his motion alleges that the imprisonment is in violation of the United States Constitution, and prays that the court enter a show cause order why he should not be released from the alleged unlawful and unconstitutional imprisonment.

The court has reviewed the file in this case, and is of the opinion that the rights of the petitioner have in nowise been violated and that a hearing is unnecessary.

On February 12, 1969, a complaint was filed in the office of the United States Commissioner at Hot Springs, Arkansas, charging the petitioner with a violation of 18 United States Code 2314. A warrant of arrest was issued, and the petitioner was arrested in Tennessee on February 20, 1969. He was released by a United States Commissioner in Tennessee on bond for his appearance to answer charges in the Western District of Arkansas.

On August 28, 1969, the Grand Jury of the Western District of Arkansas returned an indictment containing seven counts charging petitioner with violation of 18 U.S.C. § 2314. Count 1 charged that on or about June 15, 1968, the defendant "did unlawfully, wilfully, and knowingly transport and cause to be transported in interstate commerce from Hot Springs, Arkansas, to Faribault, Minnesota, to-wit: Travelers Express Money Order No. 71 3114639, dated 6–15–68, payable to W. Coleman in the amount of $125.00, purchaser's street number 1014 S. Bellmount St., Vicksburg, Mississippi, purchaser's name Harris Coleman, endorsed W. Coleman, knowing the same to have been falsely made, forged and a fraudulent security, in violation of 18 U.S.C. § 2314." Counts 2, 3, 4, 5, 6 and 7 are identical with Count 1 except as to the number of the Travelers Express Money Order.

On October 6, 1969, the defendant, with his privately employed attorney, Mr. James T. Gooch, first appeared before Hon. Oren Harris, Chief U. S. District Judge, for arraignment and upon the request of Mr. Gooch arraignment was deferred until October 21, 1969, at which time petitioner appeared with his attorney before Senior District Judge John E. Miller and entered a plea of nolo contendere which was accepted by the court and petitioner was permitted to remain on bond until November 17, 1969, at which time the court sentenced the petitioner to the custody of the Attorney General or his authorized representative for imprisonment for a period of three years on Count 1 of the indictment and three years on each of Counts 2, 3, 4, 5, 6 and 7, to run concurrently with each other, and concurrently with the sentence of three years adjudged on Count 1.

On July 1 or 2, 1968, the petitioner was arrested at Jackson, Tennessee, by the Sheriff of Carroll County, Tennessee. Petitioner had cashed a money order

of the same series at a Linden, Tennessee, bank. He was tried upon the charge and sentenced in July 1968 to 11 months and 29 days. Execution of the sentence was suspended. Concurrent with or following the arrest of the petitioner by the Tennessee Sheriff, the automobile of petitioner was searched allegedly without a warrant and a number of Travelers Express Money Orders and $1,000 in cash were recovered, but, of course, none of the money orders described in the indictment were found in the possession of the petitioner. He had on June 16, 1968, cashed the seven money orders at the Hot Springs, Arkansas, bank.

An FBI Agent was advised of the arrest of the petitioner in Tennessee on July 3, 1968, and while the record does not show, presumably certain money orders of the same series as had previously been cashed at the Hot Springs bank were discovered.

On February 12, 1969, a charge was filed against the petitioner in the office of the United States Commissioner for the Hot Springs Division, charging that he presented to the Arkansas Bank & Trust Company at Hot Springs, Arkansas, on June 16, 1968, the money orders listed in the indictment. The petitioner represented himself to the bank as W. Coleman from Vicksburg, Mississippi. Each of the money orders was cashed and the money paid to the petitioner. Later the money orders were returned to the bank marked "stolen."

On January 23, 1970, the petitioner wrote the court, and stated:

"At the writing of this letter I have been incarcerated for over two months. I have not received any infractions for breaking the rules or regulations of the institution.

"Your Honor, it is not my intention in this request to try and avert justice, but to ask the Court to find within itself leniency and relief on my behalf. If it please the Court, I would like for the court to consider vacation of the sentence, reduction of the sentence, or to give A number so that I might meet parole sooner."

On January 29, 1970, the court responded to the letter and, inter alia, stated:

"You were sentenced upon your plea of nolo contendere, which is technically a plea of guilty, but you will recall that the court thoroughly interrogated you and your attorney relative to the offenses charged in the indictment. The indictment contained seven counts, and you freely admitted the truth of the allegations contained in the indictment. It is provided in the statute that the punishment for each offense shall be a fine of not more than $10,000, or imprisonment of not more than ten years, or both.

"The court was well aware of your background and the acts committed by you, and frankly the court would have been justified in fixing a much larger sentence, but I do not as a rule fix anything approaching the maximum sentence because I believe there is some good in every person if it can be aroused and utilized.

"It is not a pleasure to me or any other Judge to sentence a person to imprisonment, but when all the facts are considered, there is absolutely no reason why this court should in anywise reduce your sentence or make any change therein."

The petitioner now makes the following specific allegations:

"1. The search and seizure of July 1, 1968 was not within the guideline of the Constitution of the United States. That the search and seizure, and the statements and evidence given at that time lead to the arrest and conviction of the petitioner by the U.S. Government.

"2. That the petitioner's conviction is not within the guidelines of Title 18, Section 2314, for which he was tried.

"3. That the petitioner was not sentenced because of the alleged acts committed under Title 18, Section 2314, but because of a pre-sentence

**1244**

investigation report made by the U.S. Probation Officer.

"4. That the pre-sentence report given in the petitioner's case was not valid, inasmuch as the statements given were not true and that the statements were not checked for the truth.

"5. That because of the foregiven reasons, the petitioner is being held by prison officials in violation of the United States Constitution."

The petitioner seems to contend that the alleged search and seizure of July 1, 1968, by a County Sheriff in Tennessee resulted in his conviction upon the charges contained in the indictment, but in view of the record made by the petitioner himself, the court is of the opinion that the contention is without merit. According to the statement of petitioner, he had cashed a stolen money order at a bank in Linden, Tennessee, of the same series as those cashed by him at a bank in Hot Springs. None of the money orders which the petitioner presented and cashed at Hot Springs were found by the County Sheriff. In all probability the Sheriff did advise a FBI Agent of the result of the search, and when it developed that the seven stolen money orders which petitioner had cashed at Hot Springs were of the same series, it probably led to the charges being filed against the petitioner and his subsequent plea of nolo contendere. Under the facts, the contention of petitioner that the search by the County Sheriff was illegal is of no avail. No objection of any kind was made by the petitioner.

The petitioner and his attorney had full information of the occurrence in Tennessee. If there was unreasonable and illegal search of the petitioner's automobile and if such search contributed to the conviction of the petitioner, he should have made timely objection in order that the court might have conducted an independent inquiry as to the validity of such search. The failure of the petitioner to advise the court and to object to the proceedings on the indictment constitutes a waiver of any alleged violation of his constitutional rights. Elkins v. United States (1960), 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669. He voluntarily made a frank statement to the court upon his plea of nolo contendere of all the facts relating to his possession and presentation to the Hot Springs bank of the money orders.

The petitioner was at all times represented by competent privately employed counsel, Hon. James T. Gooch, of Arkadelphia, Arkansas, but the present motion was apparently prepared and filed without his advice or assistance.

An examination of the transcript of the proceedings on October 21, the date of the plea of nolo contendere, discloses that petiitoner was fully advised of the charge against him and the possible effect of a conviction. The petitioner claimed that he won the money orders in a crap game and that the person from whom he won them died within two weeks thereafter from an overdose of narcotics, but he admits that he wrote each money order and presented all seven of them to the bank at Hot Springs.

After explaining the charge to the petitioner and after his plea, the court stated to him that it was necessary that the court know the facts and must be convinced "that you are making the plea upon the facts that you have stated to me; now, is that true?" Answer, "Yes, your Honor." The court further asked the petitioner, "And has it been made freely and voluntarily without any pressure of any kind from anybody but made because it is the truth and you want the court to understand it is the truth?" Answer, "Yes, your Honor." "And you are fully aware of what you did do and the possible effect of it?" Answer, "Yes, your Honor." Under those statements the court accepted the plea and let the petitioner stand on his bond until the receipt of the presentence report.

On the date of the sentence, November 17, 1969, the petitioner appeared with his attorney, Mr. Gooch. At that time the court stated:

"* * * Now, the indictment contains seven counts and deals with

seven different Travelers Express Money Orders. They were consecutively numbered, we will say 39 through 45, all or each of them made out in the sum of $125.00 and this defendant is charged that on June 15, 1968, here at Hot Springs that he did unlawfully, wilfully and knowingly transport and cause to be transported in interstate commerce from Hot Springs, Arkansas, to Faribault, Minnesota, the seven money orders described above, in violation of Title 18, United States Code, Section 2314. The purchaser's name on each money order was Harris Coleman, 1014 S. Bellmount Street, Vicksburg, Mississippi. Each of them had been endorsed by W. Coleman."

The court then stated:

"Now, here is what the report discloses as to the defendant's version. He stated he was heavily in debt and was having trouble with his wife. He started gambling with dice, cards, horses and dogs and claims he won. He stated he was in a crap game in Birmingham, Alabama, and won $9,000.00 in Travelers Express Money Orders. He won this from Mr. Williams, a Mr. Williams, he died within two weeks of an overdose of narcotics. He admits he cashed several money orders at the Trust Company in Hot Springs, Arkansas, in the amount of $125.00 each as charged in the indictment. He also stated he traveled around all over the United States for four or five months and made his living gambling. He admits cashing $2,000 worth of the money orders at the Royal Vista Inn here in Hot Springs, but the District Attorney refused to include these because they were cashed in a gambling casino. He admits that. He also admits that he cashed $3,000.00 of those money orders and admits gambling in Las Vegas, Nevada. Is that statement true, Mr. Coleman?"

Mr. Coleman: "Yes, your Honor, it is."

Beginning on page 27 of the transcript, the court further comment as to the contents of the presentence report, as follows:

"Then we have these reports of the mental and emotional status but you know, Mr. Coleman, there is a lot of information there relative to your mental and your hospital and psychiatric treatment and so forth and so on. In looking at this thing from a common sense standpoint and the record that you had in the Navy and your own admissions of what you have done, it just seems to me that you—well, I will not say you are lost, you are too smart a man to be lost—but there is every approach of a con-man in this thing, in your whole life. I do not know why, and I cannot understand why, the District Attorney did not indict you on these additional counts here. Well, I can understand that. Gamblers do not ordinarily need protection, but you know there is a degree of integrity and honesty among gamblers. It is not often that a man enters one of these gambling institutions with phoney or invalid money. Now I have had a lot of experience in the last thirty years on those things and, even in the practice of law for many years, I found the average man who had violated the law, such as moonshining, selling whiskey, transporting whiskey, gambling, so forth and so on, to be absolutely honest. Their word was just as good as their bond. They did not resort to the defrauding practices that this man has. Now. Mr. Gooch, I know, of course, knowing you as I do, and I am sure you would like for this man to be placed on probation. Is there anything that you or this man, either one, desire to say at this time upon this statement of the court that I am going to make. I am not going to place him on probation. It has been suggested that he might need some private psychiatry treatments. If he is sentenced, and he needs that, he will get it. He will get it under circumstances that will be just as good

and probably a lot better if he went to some private psychiatrist. The court cannot just make up its mind to put him on probation in view of the long record and many, many offenses that he committed."

In reference to the alleged domestic troubles of the petitioner, the court, beginning on page 34 of the transcript, said:

"There is a great deal of hostility between the ex-in-laws and this defendant. I get the feeling that if she were to remarry this defendant, he would almost certainly be ostracized from the family. He has been seeing his ex-wife and I am sure that the courting her on the one hand and the parents' hostility toward him has caused a strain on her. Now, Mr Gooch, that would ordinarily be a request that the court would consider, but I am convinced that this man here is emotional when he wants to be emotional, he is upset when he wants to be upset. The very letters that he was written which led to his discharge from the Navy convinces me that he needs some discipline. I just can't put him on temporary probation. And now, Mr. Coleman, do you care to make any statement in mitigation of punishment?"

Mr. Coleman: "No, your Honor."

■ The petitioner further contends that he was not sentenced because of the alleged acts charged in the indictment but because of a presentence investigation report made by the Probation Officer. Prior to the sentence the court fully advised both petitioner and his counsel of the contents of the presentence report and discussed it with them. No objection was made by petitioner to the facts set forth in the presentence report. The report, as to form and contents, complied fully with Rule 32(c), Federal Rules of Criminal Procedure:

"(c) Presentence Investigation.

"(1) When Made. The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

"(2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon. Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government."

If the statements contained in the presentence report were not true, he should have moved to withdraw his plea of nolo contendere. No such motion was made, but instead of objecting to the report, the petitioner voluntarily made a frank statement to the court of all facts relating to his possession, presentation and transportation in interstate commerce of the fraudulent securities.

The allegations contained in the motion of petitioner are frivolous and contrary to the facts as established by the voluntary statement of the petitioner. A hearing is not necessary, and the motion of petitioner is overruled and denied.